1  JOSHUA THOMAS FOUST (SBN 296285)
   jfoust@crowell.com
2  CROWELL & MORING LLP
   3 Embarcadero Center, 26th Floor
3  San Francisco, California 94111
   Phone: (415) 986-2800
4  Fax: (415) 986-2827

5  KATHLEEN TAYLOR SOOY
   (admitted *pro hac vice*)
6  ksooy@crowell.com
7  APRIL N. ROSS
   (admitted *pro hac vice*)
8  aross@crowell.com
   CROWELL & MORING LLP
9  1001 Pennsylvania Avenue, N.W.
   Washington, D.C. 20004
10 Phone: (202) 624-2500
11 Fax: (202) 628-5116

12 Attorneys for Defendant
   GENERAL MOTORS LLC
13

14

15                UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA
16                  SAN FRANCISCO DIVISION

17

18                                        Case No. 3:18-cv-07054-JST

19 IN RE: GENERAL MOTORS LLC CP4          **GENERAL MOTORS' NOTICE OF**
   FUEL PUMP LITIGATION                   **MOTION AND MOTION TO DISMISS**
20                                        **AND MEMORANDUM OF POINTS AND**
                                          **AUTHORITIES IN SUPPORT**
21
                                          Date:        June 27, 2019
22                                        Time:        2:00 p.m.
                                          Judge:       Hon. Jon S. Tigar
23                                        Courtroom:   9, 19th Floor

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 27, 2019 at 2:00 p.m., or as soon as counsel may be heard after that date, in the United States District Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, Courtroom 9, 19th Floor, before the Honorable Jon S. Tigar, General Motors LLC moves this Court for an order dismissing plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

## STATEMENT OF RELIEF SOUGHT

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), GM moves this Court for an order dismissing plaintiffs' complaint for the following reasons.

First, the common law fraud claims (Count I), and claims under the California Unfair Competition Law (Count II) and Consumer Legal Remedies Act (Count III), do not meet the particularity requirements of Rule 9(b). Similarly, no fraud-based claim can proceed because plaintiffs (1) do not allege facts establishing that GM had knowledge of the alleged defect at the time of sale, and (2) allege no GM duty to disclose.

Second, the unjust enrichment claims (Count IV) are barred because GM's express written warranty governs the parties' relationship; plaintiffs have adequate remedies at law; and plaintiffs do not adequately allege fraudulent conduct underlying their unjust enrichment claim.

Third, the implied warranty claims (Count V) are barred by California's privity rule because GM is a remote vehicle manufacturer, and plaintiffs do not qualify for the third-party beneficiary or advertising exceptions and do not allege facts establishing an agency relationship between GM and dealerships. Plaintiffs also do not allege facts showing their vehicles were not fit for the ordinary purpose of providing transportation or that their vehicles are within the term of the implied warranty.

Fourth, plaintiffs' claims under the Song-Beverly Act (Count VI) likewise fail because plaintiffs do not allege facts showing their vehicles were not fit for the ordinary purpose of providing transportation. Plaintiffs who purchased used vehicles cannot state a Song-Beverly Act

1    claim against GM.

2          Fifth, with no viable state-law warranty claim, the Magnuson-Moss Warranty Act claim

3    (Count VII) also fails.

4          Finally, certain plaintiffs' claims have individual deficiencies. There is no standing for 16

5    plaintiffs who do not allege they have experienced any issues with their trucks and therefore have

6    no injury; and many plaintiffs are time-barred because they purchased their vehicles too long

7    before they filed the complaint.

8          This motion is based on this Notice of Motion and Motion, the Memorandum of Points

9    and Authorities, all pleadings on file in this matter, and other matters as may be presented to the

10   Court.

11

12
     Dated:  April 15, 2019                    CROWELL & MORING, LLP
13

14
                                               By: */s/ Kathleen Taylor Sooy*
15
                                               _____
16                                             Kathleen Taylor Sooy

17
                                               Attorneys for General Motors LLC
18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiffs are owners of Chevrolet Silverado and GMC Sierra diesel trucks, model years 2011 to 2016, who use their trucks for everyday driving, commuting to work and hauling trailers and boats. After years of use and thousands of miles of driving, they now claim their trucks are defective, alleging that Bosch-manufactured CP4 fuel injection pumps in the trucks are incompatible with diesel fuel sold in the United States. Their claims fail on multiple grounds.

First, the common law fraud claims (Count I), and claims under the California Unfair Competition Law (Count II) and Consumer Legal Remedies Act (Count III), do not meet the particularity requirements of Rule 9(b). Similarly, no fraud-based claim can proceed because plaintiffs (1) do not allege facts establishing that GM had knowledge of the alleged defect at the time of sale, and (2) allege no GM duty to disclose.

Second, the unjust enrichment claims (Count IV) are barred because GM's express written warranty governs the parties' relationship; plaintiffs have adequate remedies at law; and plaintiffs do not adequately allege fraudulent conduct underlying their unjust enrichment claim.

Third, the implied warranty claims (Count V) are barred by California's privity rule because GM is a remote vehicle manufacturer, and plaintiffs do not qualify for the third-party beneficiary or advertising exceptions and do not allege facts establishing an agency relationship between GM and dealerships. Plaintiffs also do not allege facts showing their vehicles were not fit for the ordinary purpose of providing transportation or that their vehicles are within the term of the implied warranty.

Fourth, plaintiffs' claims under the Song-Beverly Act (Count VI) likewise fail because plaintiffs do not allege facts showing their vehicles were not fit for the ordinary purpose of providing transportation. Plaintiffs who purchased used vehicles cannot state a Song-Beverly Act claim against GM.

Fifth, with no viable state-law warranty claim, the Magnuson-Moss Warranty Act claim (Count VII) also fails.

Finally, certain plaintiffs' claims have individual deficiencies. There is no standing for 16 plaintiffs who do not allege they have experienced any issues with their trucks and therefore have

no injury; and many plaintiffs are time-barred because they purchased their vehicles too long before they filed the complaint.

## FACTUAL BACKGROUND

Plaintiffs are 24 California residents who purchased new or used model year 2011-2016 Chevrolet Silverado or GMC Sierra diesel trucks from independent dealerships or private parties between September 2010 and October 2018. Consolidated and Amended Class Action Complaint ("CAC") ¶¶ 11-34. Plaintiffs allege these vehicles have defective CP4 diesel fuel injection pumps manufactured and supplied by third-party Bosch. *Id.* Citing no facts in support, plaintiffs allege that Bosch's CP4 fuel pumps, which GM used in its Duramax diesel engines, are incompatible with the "Ultra Low Sulfur Diesel" fuel available in the United States. *Id.* ¶¶ 2, 66. This so-called incompatibility allegedly results in deterioration of the fuel pump which can lead to failure of the vehicle's fuel injection system. *Id.* ¶ 2.

Only eight plaintiffs allege that their vehicles ever experienced fuel pump problems. *Id.* ¶¶ 11-12, 14, 23, 25 [#2], 28, 32-34. The remaining 16 plaintiffs do not allege any interference with the use or operation of their vehicles, *see id.* ¶¶ 13, 15-22, 24, 25 [#1], 26-27, 29-31, and 12 of them concede they still drive their vehicles daily, *see id.* ¶¶ 13, 15-17, 21-22, 24-27, 29. Plaintiffs seek a court-ordered recall of all of these trucks in California, and damages because they allege their trucks are not as durable and reliable as they expected. *See, e.g., id.* ¶¶ 11-33.

Plaintiffs allege that GM was aware of the alleged incompatibility between the Bosch CP4 pump and American diesel fuel, and that GM misrepresented or omitted material facts in order to "induce[] plaintiffs . . . to pay a premium" for their vehicles. *Id.* ¶ 127. Plaintiffs cite certain GM advertisements generally referencing durability and reliability of the trucks (*id.* ¶¶ 113-24), but they do not plead that they saw or relied on any of those specific materials in making their purchase decisions. They do not identify any statements made by GM specifically related to the alleged fuel compatibility issues. *See id.* ¶¶ 11-34. Instead, plaintiffs allege generally that on unspecified dates they saw unspecified television commercials, radio advertisements, printed brochures and advertisements, or internet advertisements concerning "durability," "reliability," "power," or "fuel economy." *Id.* ¶¶ 11-13, 19-20, 25 [#1-2], 27, 30-31, 34; *see also id.* ¶¶ 14-22,

24-25, 27-29 (alleging plaintiff relied on independent dealer's statements that vehicle had "superior fuel economy" and "was more reliable"). Nearly all plaintiffs make these same general and vague allegations, even those who purchased used vehicles from third-parties many years after GM marketed and advertised those vehicles.[1]

Plaintiffs allege five causes of action: (i) fraud by concealment, (ii) violation of the California Unfair Competition Law, (iii) violation of the Consumer Legal Remedies Act, (iv) unjust enrichment, (v) breach of the implied warranty of merchantability, (vi) breach of implied warranty of merchantability under the Song-Beverly Act; and (vii) violation of the Magnuson-Moss Warranty Act. Plaintiffs seek to represent a class of California owners or lessees of certain 2011-2016 Chevrolet Silverado and GMC Sierra diesel trucks and certain 2010-2011 Chevrolet Express and GMC Savana vans with Duramax engines.[2] *Id.* ¶ 140. Plaintiffs allege "concrete economic injury" including overpaying for the vehicles at the time of purchase and "diminished value of the vehicles." *Id.* ¶¶ 11-33. Plaintiffs seek a recall, free replacement, or buy-back program, as well as costs, restitution, disgorgement, and damages, including punitive, exemplary, and treble damages. *Id.* at Prayer for Relief, p. 95.

## LEGAL STANDARDS

A federal court does not have subject matter jurisdiction over a suit that is not a "case-or-controversy" because plaintiff lacks Article III standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs bear the burden of establishing subject matter jurisdiction under Rule 12(b)(1). *See Lujan*, 504 U.S. at 561.

To avoid dismissal under Rule 12(b)(6), a plaintiff must provide the grounds for relief, which "requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a

---

[1] Plaintiffs Sutherland and Tirozzi do not allege that they saw, heard, or encountered any purported GM statements or representations. *See id.* ¶¶ 23, 32-33.

[2] GM did not use CP4 pumps after the 2016 model year. *Id.* ¶ 102.

1   claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

2   *Twombly*, 550 U.S. at 570).

3        Claims that sound in fraud, including claims based on alleged fraudulent conduct under

4   California's UCL and CLRA, must also meet the heightened pleading standards of Rule 9(b).

5   *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

6

7                                **ARGUMENT**

8   **I.    THE FRAUD-BASED CLAIMS FAIL ON MULTIPLE GROUNDS.**

9        Plaintiffs' claim for "fraud by concealment" under California law (Count I) alleges that

10  "GM intentionally concealed and suppressed material facts concerning the durability and

11  performance of the Bosch CP4 Pump and . . . of the Class Vehicles and their engines." CAC

12  ¶ 153. This claim, as well as the UCL and CLRA claims (Counts II and III) based on the same

13  underlying conduct, must meet the heightened pleading standard of Rule 9(b). *Kearns*, 567 F.3d

14  at 1125 (Rule 9(b) applies to CLRA and UCL claims that "sound in fraud"); *Hovsepian v. Apple,*

15  *Inc.*, No. 05-5788 (PVT), 2009 WL 2591445, at *4 (N.D. Cal. Aug. 21, 2009).[3] These claims do

16  not meet the particularity requirements of Rule 9(b) and do not establish that GM had a duty to

17  disclose or knew of the alleged defect at time of sale.

18  **A.    Plaintiffs Do Not Meet The Particularity Requirements Of Rule 9(b).**

19       Plaintiffs must allege with the particularity required by Rule 9(b) a "misrepresentation

20  (false representation, concealment, or nondisclosure)" by GM with "knowledge of falsity" and

21  "intent to defraud," as well as plaintiffs' "justifiable reliance" and "resulting damage." *Kearns,*

22  567 F.3d at 1126 (citation omitted). Rule 9(b) requires that the complaint contain "the who, what,

23  when, where, and how of the misconduct charged" and "what is false or misleading about a

24  statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.

25  _____

26       [3] Plaintiffs' UCL claim, whether stated as unfair, unlawful, or fraudulent, stems from the
     same allegations of misrepresentation or omission and thus sounds in fraud. *Friedman v.*
27   *Mercedes Benz USA LLC*, No. CV 12-7204 GAF CWX, 2013 WL 8336127, at *6 (C.D. Cal. June
     12, 2013).

28

2003) (internal citations and quotations omitted). For concealment claims, plaintiffs must identify "specific substantiating facts" that describe "affirmative acts of concealment." *Taragan v. Nissan N. Am.*, Inc., No. C 09-3660 SBA, 2013 WL 3157918, *7 (N.D. Cal. June 20, 2013).

The complaint here contains allegations about other manufacturers, industry groups and third-parties; it does not contain the "who, what, when, where, and how" of any alleged misrepresentation or omission *by GM*. *See Vess*, 317 F.3d at 1106. Plaintiffs do not allege that they encountered, read, or relied on any specific communication from GM about their trucks. They allege that at unspecified times and in unspecified places, plaintiffs saw or heard GM's television commercials, radio commercials, internet advertisements, sales brochures, and statements from dealer sales representatives about the vehicle's superior horsepower, fuel efficiency, reliability, and durability. CAC ¶¶ 11-22, 24-31, 34. There is no identification of any specific and material facts GM allegedly misrepresented or omitted, when or where GM misrepresented or omitted those facts, or how any specific plaintiff was misled. Nor are there any specific facts describing affirmative acts by GM to conceal any material facts. Plaintiffs' vague allegations fall short of the Rule 9(b) requirements. *See Nabors v. Google, Inc.*, No. 5:10-CV-03897 EJD, 2011 WL 3861893, at *4-5 (N.D. Cal. Aug. 30, 2011).

The complaint purports to quote from GM press releases and brochures (CAC ¶¶ 113-124), but never alleges that any plaintiff actually saw, read, or relied on any specific statement in any specific materials. These claims cannot survive where no plaintiff alleges reliance on any of the specific material quoted in the complaint. *See Great Pac. Sec. v. Barclays Capital, Inc.*, 743 F. App'x 780, 782-83 (9th Cir. 2018) (affirming dismissal where plaintiff failed to plead receipt of "the specific marketing materials and representations cited" in the complaint); *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009) ("to plead the circumstances of omission with specificity, plaintiff must . . . provide representative samples of advertisements . . . that plaintiff relied on to make her purchase").

Further, any general statements in GM's advertisements about general vehicle performance, durability or reliability are legally considered sales puffery and cannot be the basis of a fraud claim. *See Vitt v. Apple Comput., Inc.*, 469 Fed. App'x 605, 607 (9th Cir. 2012)

(affirming dismissal because claims that products are "reliable," "durable," and "high performance" are not actionable); *Beshwate v. BMW of N. Am. LLC*, No. 1:17-cv-00417-SAB, 2017 WL 6344451, at *11, 13 (E.D. Cal. Dec. 12, 2017) (holding that general statements about the reliability of a vehicle are mere puffery and not actionable); *Anunziato v. eMachines, Inc.,* 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005) ("The Court finds that the word 'reliability' is non-actionable puffery.").[4]

## B.   The Fraud-Based Claims Fail Because There Is No GM Knowledge Of A Defect At The Time Of Sale.

Plaintiffs do not allege any facts plausibly establishing that GM had knowledge of the alleged defect at the time of sale. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012). Plaintiffs make a conclusory allegation that GM had "specific and superior knowledge that the Bosch CP4 Pumps in [the plaintiffs'] vehicles will fail" (CAC ¶ 159), but they do not identify what any concealed facts are, who at GM was purportedly aware of any concealed facts, the source of that knowledge, or any specific GM actions to conceal any facts from plaintiffs.

Plaintiffs' various attempts to allege knowledge by GM are unsuccessful. First, plaintiffs allege that "GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications." *Id.* ¶ 154. Conceding that GM did not begin using the CP4 pump until 2010, plaintiffs miss the point that GM could not have known of the alleged defect eight years before the pump was used in the engine. *See* CAC ¶ 52.[5]

---

[4] Plaintiffs do not plead facts plausibly suggesting that GM acted "wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard" of plaintiffs' rights to sustain their request for punitive damages. CAC ¶ 170. With the fraud claim subject to dismissal under Rule 9(b), plaintiffs' request for punitive damages fails. *See Unique Functional Prod., Inc. v. JCA Corp.*, No. 09-CV-265-JM MDD, 2011 WL 3359657, at *5 (S.D. Cal. Aug. 3, 2011).

[5] Plaintiffs allegations about the "federal Safety Act" (CAC ¶¶ 62-63) do not establish that GM owed them a duty. *See Adams v. Nissan N. Am., Inc.*, No. 4:17-CV-2653, 2018 WL 2338871, at *5 (S.D. Tex. May 4, 2018), *report and recommendation adopted*, No. 4:17-CV-2653, 2018 WL 2337135 (S.D. Tex. May 23, 2018) (recognizing the Safety Act neither provides a private cause of action nor creates a duty to disclose information to consumers).

CASE NO. 3:18-CV-07054-JST
GM'S MOTION TO DISMISS CONSOLIDATED & AMENDED COMPLAINT

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1     Second, plaintiffs allege that a NHTSA investigation of possible defects in certain Audi

2     and Volkswagen vehicles and private communications between Audi, Volkswagen, and Bosch

3     somehow put GM on notice of alleged defects in GM vehicles. *See* CAC ¶¶ 47-49. Plaintiffs do

4     not allege that GM saw, or was even aware of, these communications. Plaintiffs do not allege that

5     the specifications of the fuel injection pumps used by Audi and Volkswagen are the same as those

6     used by GM.[6] Plaintiffs do not allege communications between GM and these other companies.

7     Plaintiffs only allege one response GM provided to a NHTSA request for information related to

8     its investigation of fuel pump failures in Volkswagen and Audi vehicles. *See id.* ¶¶ 53-54; *see*

9     *also* Ex. 1 at 1 (cited by plaintiffs, Dec. 3, 2011 Letter from C. Benavides (GM) to F. Borris

10    (NHTSA)).[7] GM responded to a NHTSA request for "peer vehicle" information (*id.* ¶ 53), not

11    because any GM vehicles were alleged to be defective (GM indicated to NHTSA that it had seen

12    a *de minimis* failure rate).[8] *See* Ex. 1 at 1 (acknowledging "no alleged defect with respect to any

13    of [GM's] vehicles and [GM] provid[ed] this information as part of the agency's investigation of

14    another manufacturer's vehicles").

15        Third, plaintiffs allege that GM "should have known" of the incompatibility from "the

16    specifications of the pump as compared to the specifications of American diesel." CAC ¶ 6.

17    Plaintiffs must allege actual knowledge with particularity, not what GM should have known. *See*

18    *Stewart v. Electrolux Home Prod., Inc.*, 304 F. Supp. 3d 894, 910 (E.D. Cal. 2018) (dismissing

19    fraudulent concealment, CLRA and UCL claims because the complaint "lack[ed] the requisite

20    specificity in alleging Electrolux had *actual knowledge* of the purported defect") (emphasis

---

[6] Even assuming that Volkswagen and Audi used similarly designed fuel pumps, a defect in their vehicles would not establish GM's knowledge of any defect in its vehicles. *Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-05452-JST, 2018 WL 2267448, at *6 (N.D. Cal. May 17, 2018) (Tigar, J.) (Plaintiff "has cited no authority, and this Court is aware of none, holding that prior recalls of similarly designed products is, standing alone, sufficient to establish knowledge of a defect.").

[7] In ruling on a Rule 12(b)(6) motion, a court may consider documents relied upon in the complaint or documents whose contents are alleged in the complaint. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

[8] Plaintiffs allege that GM identified 99 field reports of high-pressure fuel pump failure in the 2011 Chevrolet Silverado HD. *Id.* ¶ 54 (citing Ex. 1). This represents a *de minimis* failure rate of less than 0.2% for that make and model year. *See id.*

added). Plaintiffs do not allege the specifications of the specific CP4 pumps that Bosch supplied to GM. *See, e.g.*, *id.* ¶ 1-3, 52.[9] Plaintiffs do not allege that the CP4 fuel pumps Bosch manufactured for use in Europe or for other auto manufacturers are identical to those that Bosch manufactured for GM. To the contrary, plaintiffs allege different versions of the Bosch CP4 pumps. *Compare id.* ¶ 52 (alleging GM started using the CP4 pump in 2010), *with id.* ¶ 47 n.2 (alleging Audi was using a pump known as "CP4.2"). Plaintiffs' own allegations do not establish that the CP4 pumps used in GM's vehicles are the same as the CP4 pumps used in Europe or in vehicles of other manufacturers; therefore they cannot be a basis for GM knowledge.

Fourth, plaintiffs allege that a statistically insignificant number of complaints submitted to NHTSA and a handful of internet postings on third-party websites establish GM's knowledge of the supposed incompatibility of its CP4 fuel pump with U.S. diesel fuel. *See id.* ¶¶ 76-99 (alleging that, from Oct. 2010 to Nov. 2018, five consumers posted complaints about GM fuel pump issues on third-party websites and seventeen consumers filed complaints with NHTSA). Much larger numbers of complaints have been held to be insufficient to give notice of a widespread defect. *See Deras*, 2018 WL 2267448, at *4 ("Forty-five, or even fifty-six, complaints out of hundreds of thousands of vehicles does not on its face indicate an unusually high number of complaints, and [plaintiff] does not so allege. These complaints therefore do not show VW's knowledge of the alleged defect."); *Berenblat v. Apple, Inc.*, No. 08-4969-JF (PVT), 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010) (finding 350 online complaints posted to defendant's own website insufficient to show knowledge of a defect); *see also Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00593-BRO (PJWx), 2016 WL 9455016, at *13 (C.D. Cal. Nov. 14, 2016) ("these complaints merely establish that several customers had issues with their specific vehicles, not that there was a widespread defect affecting all Hyundais"). Further, plaintiffs make only conclusory

---

[9] Plaintiffs allege without citation that "[t]he Bosch CP4 Pump specifications for fuel lubricity allow for a maximum of 460 wear scar" that "[b]y definition" is incompatible with American diesel fuel. CAC ¶ 71. Plaintiffs are wrong about the specification of the CP4 pump used in GM vehicles (which allows for a maximum 520 wear scar), but the critical point for this motion is that the complaint includes no facts supporting plaintiffs' conclusory assertion of incompatibility, and plaintiffs do not plead any facts about the specifications of the CP4 pump used *in GM vehicles*.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1   allegations that GM monitored these third-party websites or ever saw the posts. *See Resnick*, 2016
2   WL 9455016, at *13 ("Plaintiffs have not presented any facts indicating that Hyundai monitored
3   these websites or was aware of these complaints."); *Oestreicher v. Alienware Corp.*, 544 F. Supp.
4   2d 964, 974 n.9 (N.D. Cal. 2008), *aff'd*, 322 Fed. Appx. 489 (9th Cir. 2009) (dismissing CLRA
5   claim because "[r]andom anecdotal examples of disgruntled customers posting their views on
6   websites" did not establish knowledge of an alleged defect where there were no other "allegations
7   that [the defendant] knew of th[ose] customer complaints").

8        Also, to the extent these complaints were submitted to NHTSA *after* certain plaintiffs
9   purchased their vehicle, they cannot show knowledge of the defect at the time of purchase. *See,*
10  *e.g.*, *Durkee v. Ford Motor Co.*, No. 14-0617 PJH, 2014 WL 4352184, at *3 (N.D. Cal. Sept. 2,
11  2014); *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1201 (N.D. Cal. 2014). Here, seven plaintiffs
12  purchased their vehicles before the NHTSA complaints were filed. *Compare* CAC ¶¶ 11-12, 22-
13  23, 26, 28, 32-33, *with id.* ¶¶ 78-89, 95-99. Also, five of the 17 NHTSA complaints relate to
14  vehicles *that no plaintiff purchased*. CAC ¶¶ 79-82, 84, 85, 86-88, 95-97, 99.

15       Fifth, plaintiffs allege that GM knew of this issue through warranty and testing
16  information but plead no facts in support of their conclusion. CAC ¶¶ 57-58. These generic,
17  conclusory allegations are insufficient to establish GM's knowledge. *See Mandani v. Volkswagen*
18  *Grp. of Am., Inc.*, No. 17-CV-07287-HSG, 2019 WL 652867, at *8 (N.D. Cal. Feb. 15, 2019)
19  ("[C]onclusory allegations of pre-purchase knowledge based on 'pre-sale design and testing' are
20  insufficient."); *Stewart v. Electrolux Home Prods., Inc.*, No. 1:17-cv-01213-LJO-SKO, 2018 WL
21  1784273, at *9 (E.D. Cal. Apr. 13, 2018) (rejecting "presumption of knowledge" based on
22  "general allegations about [defendants'] internal testing or quality controls"); *Beck v. FCA US*
23  *LLC*, 273 F. Supp. 3d 735 (E.D. Mich. 2017) (collecting cases rejecting generic allegations based
24  on testing and analysis); *Greene v. BMW of N. Am.*, No. 2:11-04220 (WJM), 2012 WL 5986461,
25  at *7 (D.N.J. Nov. 28, 2012) (rejecting knowledge argument based on product testing as
26  "ungrounded speculation").

27       Finally, plaintiffs point to two GM service bulletins, but these post-date seven plaintiffs'
28  vehicle purchases and merely recommend certain diagnostic procedures to be used when a

1    customer reports a "hard start or no start" problem with a Duramax diesel engine. CAC ¶ 100

2    (quoting August 2014 bulletin instructing inspection of fuel pressure regulator and retention of

3    affected components if fuel injunction pump replacement was necessary); ¶ 101 (alleging GM

4    reissued the service bulletin to include model years through 2016). These service bulletins do not

5    identify U.S. diesel fuel as the cause of any fuel pump failure or suggest any fuel incompatibility

6    issue or defect. *See id.* ¶¶ 100-101.[10]

7    **C.    The Fraud-Based Claims Fail Because There Is No Duty To Disclose.**

8           Plaintiffs' fraud allegations fail because they do not allege any facts establishing that GM

9    owed them a duty to disclose. As a threshold matter, plaintiffs cannot establish a duty to disclose

10   information not known to GM. *See San Diego Hospice v. Cnty. of San Diego*, 31 Cal. App. 4th

11   1048, 1055 (1995) (recognizing duty to disclose arises only when facts are "actually known to the

12   defendant").

13          Even if plaintiffs had adequately alleged knowledge, a "manufacturer's duty to consumers

14   is limited to its warranty obligations absent either an affirmative misrepresentation or a safety

15   issue.'" *Wilson*, 668 F.3d at 1141 (citing *Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493

16   (9th Cir. 2009)). Plaintiffs do not allege any actionable misrepresentation, nor do they allege a

17   safety issue or personal injury claims. *See* CAC ¶ 141 (expressly excluding any individuals with

18   personal injury claims from the putative class). While plaintiffs conclusorily allege an "inherent

19   risk to consumer safety" (*id.* ¶ 3), most plaintiffs admit they have had no problems with their

20   vehicle and continue to use them daily. CAC ¶¶ 13, 15-22 24-25[#1], 26-27, 29-31.

21

22

23          [10] *See also Sloan v. Gen. Motors LLC*, No, 16-cv-07244-EMC, 2017 WL 3283998, at *7
     (N.D. Cal. Aug. 1, 2017) (holding that a TSB does not support inference of knowledge unless it
24   "explicitly addressed the claimed defect"); *Blissard v. FCA US LLC*, No. LA CV18-02765 JAK
     (JEMx), 2018 WL 6177295, at *13 (C.D. Cal. Nov. 9, 2018) ("Although safety bulletins can
25   demonstrate knowledge, there is no statement in the cited [bulletins] that [the manufacturer] was
     aware of the specific defect alleged in the Complaint."); *Fisher v. Honda N. Am., Inc.*, No. LA
26   CV13-09285 JAK (PLAx), 2014 WL 2808188, at *6 (C.D. Cal. June 12, 2014) (plaintiffs failed
     to plead how the TSBs related to the alleged defect because the TSB attributed the locking defect
27   to locks locking by themselves or locking twice, while plaintiff alleged that the defect caused the
     locks to fail to engage).

28

Plaintiffs allege that GM owed a duty to disclose based on its "exclusive knowledge," "intentional[] conceal[ment]," and "purposeful[ ] withholding [of] material facts." CAC ¶ 180. But this is belied by their many allegations of public information about the alleged defect, such as the NHTSA investigations of Audi and Volkswagen. *See, e.g.*, CAC ¶ 53 n.7 (alleging NHTSA began its investigation of fuel pumps in Audi and Volkswagen vehicles in February 2011); *see also id.* ¶¶ 47-49 & nn. 3-6 (quoting and citing publicly-available materials produced by Bosch, Audi, and Volkswagen as part of that investigation). While plaintiffs elsewhere declare that GM had "specific and superior knowledge that the Bosch CP4 Pumps in [the plaintiffs'] vehicles will fail" (*id.* ¶ 159), plaintiffs do not identify who at GM was purportedly aware of any concealed facts, the source of that knowledge, or any specific actions GM took to conceal the facts from plaintiffs. *Hovsepian*, 2009 WL 2591445, at *3 (dismissing where complaint contained "only generalized allegations with respect to exclusive knowledge").

Likewise, plaintiffs do not adequately plead particularized facts demonstrating that GM took steps to actively conceal the alleged fuel incompatibility.[11] *See Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690 PSG JCX, 2012 WL 313703, at *9 (C.D. Cal. Jan. 23, 2012), *aff'd sub nom. Gray v. Toyota Motor Sales, U.S.A., Inc.*, 554 F. App'x 608 (9th Cir. 2014) (recognizing that "mere nondisclosure" is not "active concealment").

## II.    THE UNJUST ENRICHMENT CLAIMS ARE NOT VIABLE.

The unjust enrichment claims (Count IV) cannot proceed. First, unjust enrichment is not available where there is an enforceable express contract. *See Deras*, 2018 WL 2267448, at *3 (Tigar, J.) (dismissing unjust enrichment claim with prejudice where complaint alleged "that 'a valid express contract covering the same subject matter exists between the parties'"). Here, plaintiffs allege the existence of a written warranty covering their vehicles. CAC ¶ 125.

---

[11] Plaintiffs' allegations show the opposite. CAC ¶ 54 (GM voluntarily provided information about its fuel pumps to NHTSA).

1      Second, unjust enrichment is not available where there is an adequate legal remedy.
2   *Nguyen v. Nissan N. Am., Inc.*, No. 16-CV-05591-LHK, 2017 WL 1330602, at *4-5 (N.D. Cal.
3   Apr. 11, 2017) (dismissing unjust enrichment where plaintiff had an adequate remedy at law). An
4   adequate legal remedy exists where a cause of action could address the alleged conduct if the
5   conduct was unlawful. *Id.* This bar applies regardless of whether plaintiffs state a legally
6   sufficient claim. *See Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017) ("It
7   matters not that a plaintiff may have no remedy if her other claims fail."). Here, the conduct
8   underlying plaintiffs' unjust enrichment claim is identical to the conduct underlying their fraud
9   and warranty claims.[12]

10      Third, plaintiffs who purchased used vehicles from third parties conferred no benefit on
11   GM and cannot state an unjust enrichment claim. *Mandani v. Volkswagen Grp. of Am., Inc.*, No.
12   17-CV-07287-HSG, 2019 WL 652867, at *7 (N.D. Cal. Feb. 15, 2019); *see* CAC ¶¶ 14, 16, 17,
13   23, 27, 25[#2], 29, 31, 32-33.

14      Finally, plaintiffs' unjust enrichment claims are not viable because they do not meet the
15   requirements of Rule 9(b) in pleading the underlying allegedly fraudulent conduct. *See*
16   *Oestreicher,* 544 F. Supp. 2d at 975 ("[S]ince plaintiff's fraud-based claims have been dismissed,
17   plaintiff has no basis for its unjust enrichment claim."); *Hovsepian*, 2009 WL 2591445, at *5
18   (dismissing unjust enrichment claim "premised on the same alleged course of conduct that
19   underlies" plaintiffs' inadequately pled "CLRA, UCL, and fraudulent omission claims"); *Hoey v.*
20   *Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1106 (N.D. Cal. 2007) (same).

21

22

23

24

---

25   [12] Plaintiffs' claims for equitable relief under the UCL and CLRA fail for the same reason. *See*
26   *Nguyen*, 2017 WL 1330602, at *4-5; *Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS,
     2018 WL 510139, at *4 (N.D. Cal. Jan. 23, 2018), *appeal docketed*, No. 18-15890 (9th Cir. May
27   17, 2018); *see also Mandani v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-07287-HSG, 2019 WL
     652867, at *7 (N.D. Cal. Feb. 15, 2019) (explaining UCL provides only equitable remedies).

28

## III.   PLAINTIFFS DO NOT STATE AN IMPLIED WARRANTY CLAIM.

### A.   Plaintiffs Did Not Purchase Their Vehicles From GM.

Because plaintiffs purchased their vehicles from independent dealerships or private sellers (CAC ¶¶ 11-34), they cannot allege the type of contractual privity with GM required for a breach of implied warranty claim under California law (Count V). A plaintiff cannot recover for breach of implied warranty unless he directly purchased the product from the defendant. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). Thus, consumers who purchase vehicles from independent dealerships cannot assert implied warranty claims against the vehicle's manufacturer. *See id.*; *Gonzalez v. Mazda Motor Corp.*, No. 16-CV-02087-MMC, 2017 WL 345878, at *3 (N.D. Cal. Jan. 5, 2017).

Plaintiffs argue they fall within an exception to the privity requirement because they are third-party beneficiaries of GM's sales to its authorized dealers. CAC ¶¶ 223, 248.[13] While some district courts have recognized this exception,[14] "no published decision of a California court has applied this doctrine in the context of a consumer claim against a product manufacturer." *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 787 (N.D. Cal. 2017); *accord Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1083 (N.D. Cal. 2011). The Ninth Circuit expressly rejected attempts to create new exceptions to California's privity requirement for vehicle purchasers. *See Clemens*, 534 F.3d at 1023 (dismissing implied warranty claim against auto manufacturer for lack of privity). Finally, plaintiffs allege that reliance on GM's advertising eliminates the privity requirement. CAC ¶ 224 n.67 (citing *Clemens*, 534 F.3d at 1023). But plaintiffs do not allege that they saw, heard, or relied upon any specific GM advertisement.

---

[13] Five plaintiffs, Cochems, Sutherland, Samson, A. R. Smith, and Tirozzi, do not allege that they purchased their vehicles from GM-authorized dealerships. FAC ¶¶16, 23, 25 [#2], 27, 32-33.

[14] *See* CAC ¶ 223 n. 66 (citing *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 982 n.15 (N.D. Cal. 2014) and *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 922 (N.D. Cal. 2018)).

Finally, plaintiffs do not allege sufficient facts to show an agency relationship between GM and dealers. *Compare* CAC ¶ 248, *with Friedman v. Mercedes Benz USA LLC*, No. CV 12-7204 GAF CWX, 2013 WL 8336127, at *6 (C.D. Cal. June 12, 2013) ("[A]n agency relationship cannot just be assumed, rather facts must be pleaded."); *see also Williams v. Yamaha Motor Corp., U.S.A.*, No. CV 13-05066 BRO (vbkX), 2015 WL 13626022, at *6 (C.D. Cal. Jan. 7, 2015) (no agency relationship where none of plaintiffs' factual allegations "distinguish Defendant's relationship with its dealers from that of other manufacturers and their dealers"). Courts consistently find that there is no principal-agent relationship between automobile manufacturers such as GM and dealers. *Williams*, 2015 WL 13626022, at *6 ("[T]he relationship between automobile manufacturers and their dealers has been examined by a host of courts throughout the country, all of which have agreed that dealers are not agents of manufacturers") (internal citations and quotations omitted).

**B.     Plaintiffs Do Not Allege Their Vehicles Were Unmerchantable At The Time Of Sale.**

The implied warranty of merchantability provides for a minimum level of quality and does not "impose a general requirement that goods precisely fulfill the expectations of the buyer." *Am. Suzuki Motor Corp. v. Superior Court*, 44 Cal. Rptr. 2d 526, 529 (Ct. App. 1995) (citation omitted) (rejecting argument that "remote fear or expectation of failure is sufficient to establish non-merchantability"). A vehicle's ordinary purpose is providing transportation. *Id.*

Here, plaintiffs do not allege that their vehicles were not fit for the ordinary purpose of providing transportation. To the contrary, plaintiffs allege that they drive their trucks "daily" and have used them for a variety of purposes over thousands of miles without incident.[15] Only eight

---

[15] *See* CAC ¶ 11 (Rudy "uses his Silverado 2500 HD to tow his 25-foot boat and 35-foot 5th wheel trailer on vacations with his family"); ¶ 12 (Sizelove "uses his Silverado 2500 HD as his daily transportation and occasionally uses [it] to pull his trailer"); ¶ 13 (Huss "uses his Silverado 2500 HD for daily travel and also to travel between his home in La Miranda, California and his vacation home, in Arizona" and "to tow his two boats to and from the lake"); ¶ 14 (Moonan "uses his Silverado 2500 HD as his personal daily driving vehicle" and "to tow dump trailers, equipment and other materials needed at his contracting sites"); ¶ 15 (Garlock "uses his Silverado 3500 HD as his personal vehicle to get to work and for daily activities"); ¶ 16 (Cochems "uses his Silverado 2500 HD as his personal vehicle to get to work and for daily activities"); ¶ 17 (Buob (Continued…)

CROWELL
& MORING LLP
ATTORNEYS AT LAW

plaintiffs allege they have ever had any issues with their fuel pumps, and even then only after

many years of daily driving.[16]

### C.   Plaintiffs Do Not Allege Facts Showing Their Vehicles Are Within The Term Of The Implied Warranty.

Plaintiffs allege GM provided an "express 100,000 mile/5-year" warranty on their

vehicles. CAC ¶ 125. That express warranty states that "[a]ny implied warranty of

merchantability or fitness for a particular purpose" is limited to the duration of the express

warranty. *See* Ex. 2 at 13[17]; *see also Hovsepian*, 2009 WL 2591445, at *8 (recognizing

manufacturer's limitation on duration of implied warranty of merchantability). Some plaintiffs

purchased used vehicles after the express and implied warranty period expired. *See* CAC ¶ 16

(Cochems, used 2011 Silverado purchased in 2018 with no manifested defect); ¶ 31 (Diniz, used

2013 Sierra purchased in 2018 with no manifested defect). And many plaintiffs concede their

vehicles are more than five years old and/or had more than 100,000 miles, and that they did not

experience a defect in the warranty period. *See id.* ¶ 11 (Rudy, 2012 Silverado purchased in 2011

___

[16] "uses his Silverado 2500 HD as his personal vehicle to get to work and for daily activities"); ¶ 18 (McCoy "uses his Silverado 2500 HD as his personal vehicle and to haul his 30' trailer and his boat"); ¶ 20 (White "uses it for personal traveling and errands around town"); ¶ 21 (Smith "uses his Silverado 2500 HD as his personal vehicle to get to work and for daily activities"); ¶ 22 (Lawson "uses his Silverado 2500 HD as his personal vehicle to get to work and for daily activities"); ¶ 23 (Sutherland "uses his Silverado 2500 HD as his personal vehicle and to tow all his 'toys,' his fishing boat, off-road cars, dirt-bikes, and trailers"); ¶ 24 (Hughes "uses his Silverado 2500 HD as his personal vehicle to get to work and for daily activities"); ¶ 25 [#1] (Barry "uses his Silverado 3500 HD as his daily driver and to occasionally haul his 40' camping trailer"); ¶ 25 [#2] (Samson "uses his Sierra HD Denali as his personal vehicle to get to work and for daily activities"); ¶ 26 (Rice "uses his Sierra HD as his personal vehicle to get to work and for daily activities"); ¶ 27 (A.R. Smith "purchased his GMC truck to help tow large loads for work and maintenance, and also as his daily driving vehicle"); ¶ 28 (Jensen "used his Sierra 3500 HD as his personal vehicle to get to work and for daily activities, and for travel and to haul horse trailers"); ¶ 29 (Askin "uses his Sierra 2500 HD as his personal vehicle to get to work and for daily activities").

[16] CAC ¶ 11 (fuel pump in 2012 vehicle allegedly failed in 2017); ¶ 12 (fuel pump in 2011 vehicle allegedly failed "three months after [ ] the time limit for warranty claim"); ¶ 14 (fuel pump in 2016 vehicle allegedly failed at unidentified time); ¶ 23 (fuel pump in 2011 vehicle allegedly failed in 2018); ¶ 25[#2] (fuel pump in 2016 vehicle allegedly failed in 2018); ¶ 28 (fuel pump in 2015 vehicle allegedly failed in 2017); ¶¶ 44-45 (fuel pump in 2013 vehicle allegedly failed in 2015); ¶ 34 (fuel pump in 2012 vehicle allegedly failed in 2017).

[17] Courts may consider documents relied upon or whose contents are alleged in the complaint. *See Coto Settlement*, 593 F.3d at 1038.

with no manifested defect until 2017); ¶ 12 (Sizelove, 2011 Silverado purchased in 2010 with no manifested defect until "three months after [ ] the time limit for warranty claim"); ¶ 22 (Lawson, 2013 Silverado purchased on Jan. 1, 2013 with no manifested defect); ¶ 23 (Sutherland, used 2011 Silverado purchased on July 1, 2013 with no manifested defect before August 8, 2018); ¶ 27 (A. R. Smith, used 2011 Sierra purchased in 2015 with no manifested defect); ¶ 34 (C. Smith, used 2012 Silverado, no manifested defect until approximately 143,000 miles on vehicle).

## IV.   PLAINTIFFS DO NOT STATE A CLAIM UNDER THE SONG-BEVERLY ACT.

To assert a Song-Beverly claim, plaintiffs must allege facts showing that they purchased vehicles that were not "fit for the ordinary purposes for which such goods are used." *See Hindsman v. Gen. Motors LLC*, No. 17-CV-05337-JSC, 2018 WL 2463113, at *14 (N.D. Cal. June 1, 2018); *Resnick v. Hyundai Motor Am., Inc.*, No. CV16-00593-BRO(PJWx), 2017 WL 6549931, at *12 (C.D. Cal. Aug. 21, 2017). Plaintiffs here have not pled sufficient facts establishing that their vehicles were unfit for their ordinary purpose at the time of sale. *See* Section III.B above; *Resnick*, 2017 WL 6549931, at *12; *Hindsman*, 2018 WL 2463113, at *14.

Plaintiffs who purchased *used* vehicles cannot state a claim under the Song-Beverly Act. *Hindsman*, 2018 WL 2463113, at *14. The claims of plaintiffs Moonan, Cochems, Buob, Sutherland, Samson, A.R. Smith, Askin, Diniz and Tirozzi should be dismissed for this additional reason. *See* CAC ¶ 14, 16, 17, 23, 25[#2], 27, 29, 31, 32.

## V.   THERE IS NO VIABLE MMWA CLAIM.

The Magnuson-Moss Warranty Act claim (Count VI) fails because the Ninth Circuit recognizes that a MMWA claim rises or falls with a plaintiff's implied warranty claim under state law. *Clemens*, 534 F.3d at 1022. Plaintiffs here base their MMWA claim on the same theory as their implied warranty claim, and therefore it fails for the same reasons. *See id.* at 1027 (dismissing MMWA claim where implied warranty claim failed under California law).

1

## VI.   CERTAIN PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL REASONS.

2

### A.   Sixteen Plaintiffs Allege No Injury Or Manifested Defect.

3

Only eight[18] plaintiffs allege they had issues with the CP4 fuel pumps in their vehicles.

4

The remaining 16 plaintiffs allege no injury, and thus fail to state viable claims.

5

#### 1.   No Standing.

6

Without any allegation that their vehicles experienced any defect, plaintiffs Huss,

7

Garlock, Cochems, Buob, McCoy, McAlister, White, Sean T. Smith, Lawson, Hughes, Barry,

8

Rice, Anthony R. Smith, Askin, Maduro, and Diniz, do not meet the injury-in-fact requirement

9

for Article III standing. *See Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 967-68, 971

10

(N.D. Cal. 2015), *aff'd*, 717 F. App'x 720 (9th Cir. 2017) (dismissing for lack of standing where

11

plaintiffs alleged neither "a demonstrable effect on the market for their specific vehicles" nor "a

12

risk so immediate that they were forced to replace or discontinue using their vehicles"); *Gonzalez*

13

*v. Kinro, Inc.*, 473 F. App'x 768, 769 (9th Cir. 2012) (affirming dismissal of UCL claims brought

14

by certain plaintiffs who "introduced no evidence to support the conclusory allegation that their

15

homes lost value due to this possible defect," where only one plaintiff had experienced the defect

16

and incurred a cost to replace); *see also Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009)

17

(holding "alleged loss in value does not constitute a distinct and palpable injury that is actual or

18

imminent" when "it rests on a hypothetical risk").[19]

19

#### 2.   No Manifestation Of Alleged Defect.

20

These plaintiffs also fail to state a claim under Rule 12(b)(6) because "purchasers of an

21

allegedly defective product have no legally recognizable claim where the alleged defect has not

22

manifested itself in the product they own." *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628 (8th

23

24

[18] Plaintiffs Rudy (¶ 11), Sizelove (¶ 12), Moonan (¶ 14), Sutherland (¶ 23), Samson (¶ 25 [#2]), Jensen (¶ 28), Tirozzi (¶¶ 32-33), and C. Smith (¶ 34).

25

26

[19] Because plaintiffs have not alleged that they intend to purchase these vehicles in the future, they lack standing on claims for injunctive relief. *Nguyen v. Nissan N. Am., Inc.*, No. 16-CV-05591-LHK, 2017 WL 1330602, at *5 (N.D. Cal. Apr. 11, 2017) (dismissing claim for injunction under UCL and CLRA for lack of standing); *see* CAC ¶ 186 (alleging plaintiffs seek an injunction under the UCL).

27

28

Cir. 1999) (citation omitted); *see also In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002). Without a manifested defect, there is no injury and therefore no viable claim. *See* CAC ¶¶ 13, 15-22, 24-25[#1], 26-27, 29-31; *see also Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1064 (2012) ("If the existence . . . of damages alleged in a fraud pleading is 'too remote, speculative or uncertain,' then the pleading cannot state a claim for relief.") (citation omitted); Cal. Civ. Code § 1780(a) (CLRA claim requires damage); *Azouli v. BMW of N. Am. LLC*, No. 16-cv-00589-BLF, 2017 WL 1354781, *5 (N.D. Cal. Apr. 13, 2017) (recognizing standing under UCL requires loss of "money or property" and under CLRA requires "some kind of damage"); *Oestreicher*, 544 F. Supp. 2d at 973 ("[T]he failure to disclose a defect that might, or might not, shorten the effective life span of an automobile part that functions precisely as warranted throughout the term of its express warranty cannot be characterized as causing a substantial injury to consumers, and accordingly does not constitute an unfair practice under the UCL.") (citation omitted).

### B.    Many Plaintiffs' Claims Are Time-Barred.

Plaintiffs Sizelove, Rudy, Lawson, Sutherland, Tirozzi, Rice, Jensen, and McCoy purchased their vehicles more than four years before bringing this action. CAC ¶ 12 (September 2010); ¶ 11 (November 2011); ¶ 22 (January 2013); ¶ 23 (July 2013); ¶¶ 32-33 (November 2013); ¶ 26 (March 2014); ¶ 28 (June 2014); ¶ 18 (October 2014). Their UCL, implied warranty, Song-Beverly, and MMWA claims are barred by the applicable four-year statutes of limitations.[20] Their CLRA and fraud claims are barred by the applicable three-year statutes of limitations.[21] Plaintiffs McAlister, Smith, Huss, and Hughes purchased their vehicles more than three years before

---

[20] *See* Cal. Bus. & Prof. Code § 17208 (UCL); Cal. Com. Code §§ 2725(1)-(2) (4-year limitations period for implied warranty begins upon tender of delivery); *Hindsman v. Gen. Motors LLC*, No. 17-CV-05337-JSC, 2018 WL 2463113, at *14 (N.D. Cal. June 1, 2018) (Song-Beverly Act claim accrues when the sale is made); *Mitchell v. Skyline Homes*, No. CIV S-09-2241 KJM, 2010 WL 1791281, at *1 (E.D. Cal. May 4, 2010) (MMWA).

[21] Cal. Civ. Code § 1783 (CLRA) ; Cal. Civ. Proc. Code § 338(d) (fraud).

1    bringing this action, and thus their CLRA and fraud claims are time barred. *See* CAC ¶ 19 (May

2    2015); ¶ 27 (August 2015); ¶ 13 (September 2015); ¶ 24 (October 2015).[22]

3           Plaintiffs' implied warranty, Song-Beverly, and MMWA claims are not subject to the

4    discovery rule. *Matray v. Ford Motor Co.*, CV 11-7767-GHK (CWX), 2011 WL 13221015, at *2

5    (C.D. Cal. Nov. 9, 2011) (implied warranty); *Marcus v. Apple Inc*, No. C 14-03824 WHA, 2015

6    WL 151489, at *8 (N.D. Cal. Jan. 8, 2015) (Song-Beverly); *see also Clemens*, 534 F.3d at 1022

7    (recognizing MMWA claim rises or falls with implied warranty claim). Further, plaintiffs have

8    not met their burden to show they get the benefit of the discovery rule for other claims. *Finney v.*

9    *Ford Motor Co.*, No. 17-cv-06183-JST, 2018 WL 2552266, at *4 (N.D. Cal. June 4, 2018) (Tigar,

10   J.). To invoke the discovery rule, plaintiffs must plead facts sufficient to show "(1) the time and

11   manner of discovery and (2) the inability to have made earlier discovery despite reasonable

12   diligence." *Id.* at *3; *Garcia v. General Motors, LLC*, No. 1:18-cv-01313-LJO-BAM, 2018 WL

13   6460196, at *4 (E.D. Cal. Dec. 10, 2018). None of these plaintiffs allege when or how he learned

14   of the alleged concealment. *See* CAC ¶¶ 129, 133 (alleging without detail that plaintiffs "only

15   learned" of the concealment "shortly before the filing of this Complaint"). And they offer nothing

16   more than a bare assertion that they "could not have discovered" GM's alleged concealment

17   "through the exercise of reasonable diligence," even though they cite publicly available internet

18   postings as early as 2010. *Id.* ¶ 132; *see id.* ¶ 76. Plaintiffs' conclusory allegations with no

19   supporting facts are insufficient to trigger the discovery rule.

20          Plaintiffs also attempt to save their time-barred claims by alleging the statutes of

21   limitations are tolled by GM's fraudulent concealment. CAC ¶¶ 134-138. To rely on tolling, a

22   plaintiff must allege the substantive elements of fraud and (1) when they discovered the purported

23   fraud, (2) the circumstances surrounding that discovery, and (3) that the plaintiffs lacked

24   knowledge of facts that would have put them on inquiry notice. *Garcia*, 2018 WL 6460196, at *6

25   ("Fraudulent concealment tolling must be pled with particularity under Fed. R. Civ. P. 9(b).")

26

27          [22] Calvin Smith does not allege facts sufficient to establish that his claim is timely under
     the applicable statutes of limitations. *Id.* ¶ 34.

28

1  (citation omitted). Plaintiffs do not allege their fraud claims with the required particularity. And

2  none of these plaintiffs allege when or how they learned of the alleged concealment. *See* CAC ¶¶

3  11-34.

4

5  **C.      Plaintiff Tirozzi Cannot State A CLRA Or Song-Beverly Claim.**

6          Plaintiff Tirozzi alleges that he "purchased the vehicle to earn a living pulling new travel

7  trailers, as Plaintiff has a CDL and is therefore a professional driver." CAC ¶ 33. Because the

8  complaint alleges that he did *not* purchase the vehicle for "personal, family, or household

9  purposes," but rather for a business purpose, his CLRA and Song-Beverly Act claims fail. *Frezza*

10 *v. Google Inc.*, No. 12-CV-00237-RMW, 2012 WL 5877587, at *4 (N.D. Cal. Nov. 20, 2012)

11 (CLRA); *see* Cal. Civ. Code § 1791 (For Song-Beverly Act, "'[c]onsumer goods' means any new

12 product or part thereof that is used, bought, or leased for use primarily for personal, family, or

13 household purposes.").

14                                      **<u>CONCLUSION</u>**

15         For these reasons, GM respectfully requests dismissal of all of plaintiffs' claims.

16

17 DATED: April 15, 2019                    Respectfully submitted,

18

19

20                                          CROWELL & MORING LLP

21                                          */s/ Kathleen Taylor Sooy*

22                                          Kathleen Taylor Sooy
                                            April N. Ross
23                                          Joshua Thomas Foust

24                                          Attorneys for
                                            GENERAL MOTORS LLC

25

26

27

28

1

<u>**CERTIFICATE OF SERVICE**</u>

2           In accordance with Rule 5-5 of the Local Rules of Practice in Civil Proceedings Before

3  the United States District Court for the Northern District of California, I, Kathleen Taylor Sooy,

4  hereby certify under penalty of perjury under the laws of the United States of America that on

5  April 15, 2019, a true copy of the above document was filed through the Court's Case

6  Management/Electronic Case Filing ("CM/ECF") System and served by that System upon all

7  counsel of record registered for the System and deemed to have consented to electronic service in

8  the above-captioned case. Any other counsel of record will be served by electronic mail and/or

9  first-class mail on the same date.

10

11  Dated: April 15, 2019                          CROWELL & MORING LLP

12

13                                                   By: */s/ Kathleen Taylor Sooy*

14                                                       Kathleen Taylor Sooy

15                                                   Attorneys for General Motors LLC

16

17

18

19

20

21

22

23

24

25

26

27

28