JOSHUA THOMAS FOUST (SBN 296285)
jfoust@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Phone: (415) 986-2800
Fax: (415) 986-2827

KATHLEEN TAYLOR SOOY
(admitted *pro hac vice*)
ksooy@crowell.com
APRIL N. ROSS
(admitted *pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116

Attorneys for GENERAL MOTORS LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: GENERAL MOTORS LLC CP4 FUEL PUMP LITIGATION | Case No. 3:18-cv-07054-JST<br><br>**GENERAL MOTORS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:       June 27, 2019<br>Time:       2:00 p.m.<br>Judge:      Hon. Jon S. Tigar<br>Courtroom:  9, 19th Floor |

Plaintiffs' opposition cannot save their claim that their vehicles are "incompatible" with American diesel fuel despite hundreds of thousands of miles of incident-free driving. Plaintiffs' claims fail because they have express contracts and adequate remedies at law; they lack privity with GM; and they have not plead facts supporting their fraud, UCL, and CLRA claims. In addition, certain plaintiffs lack standing and injury, and make untimely claims.

## ARGUMENT

### I. THE FRAUD CLAIMS ARE INSUFFICIENT ON MULTIPLE GROUNDS.

#### A. Plaintiffs Do Not Adequately Plead Fraud Under Rule 9(b).

Plaintiffs argue that their complaint "more than meets the [who, what, when, where, and how] standard" of Rule 9(b) because they allege generally that each plaintiff "'relied on representations' from GM 'that the vehicle was compatible with American diesel fuel.'" Pls.'Opp. to GM's Motion to Dismiss ("Opp."), ECF No. 44 at 11-12. But plaintiffs must plead facts about what specific representations or omissions were made, and by whom, to allow GM to defend against those allegations. *See County of Santa Clara v. Astra U.S., Inc.*, 428 F. Supp. 2d 1029, 1036-37 (N.D. Cal. 2006).[1] No plaintiff alleges *any* facts about the representations they allegedly relied upon.

Plaintiffs' own authorities confirm these requirements. They cannot merely point generally to national marketing campaigns, dealership sales materials, and statements by dealers' representatives. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). To be actionable, plaintiffs must allege: (1) when they saw or heard those statements; and (2) who made those statements or where they saw them. *Id.* at 1126 (dismissing for failure to allege fraud with particularity); *Finney v. Ford Motor Co.*, 2018 WL 2552266, at *7-8 (N.D. Cal. June 4, 2018)

---

[1] *See also* GM's Motion to Dismiss, ("GM Br."), ECF No. 39 at 7-9; *Aureflam Corp. v. Pho Hoa Phat I, Inc.*, 375 F. Supp. 2d 950, 953-54 (N.D. Cal. 2005) ("A fraud claim must specifically state the alleged fraud itself: 'Plaintiffs may fairly be expected to identify with specificity the defendant's alleged misrepresentations, though they are not expected to plead with specificity the defendant's state of mind.") (quoting *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995)).

(Tigar, J.) (generic allegations that "sales personnel" at dealership "told [plaintiff] the engine offered 'superior power and tow capacity'" are insufficient because plaintiff did not plead "specifically when this occurred" or "who made the representation"); *see also Lovesy v. Armed Forces Ben. Ass'n*, 2008 WL 4856350, at *2 (N.D. Cal. Nov. 7, 2008) ("A plaintiff must allege the time, place, and contents of the false representations or omissions, as well as *the identity of the person* making the misrepresentations.") (emphasis added).

Plaintiffs argue without any authority that certain GM representations about "horsepower," "torque," "emission performance," and "superior fuel economy" are specific, quantifiable statements of fact. Opp. at 12-13. This Court has held, and other courts consistently agree, that those descriptors are non-actionable puffery. *See Finney*, 2018 WL 2552266 at *1, *8 ("Defendant's statements that the truck had the 'best in-class: horsepower, gas torque, unsurpassed diesel horsepower'" and "superior power and tow capacity" constitute puffery); *see also Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012) ("statements about performance and power constitute non-actionable puffery").[2] In any event, plaintiffs do not complain about their vehicles' horsepower, torque, emissions performance, or fuel economy. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false.") (citation omitted).

Plaintiffs also make the nonsensical argument that advertisements "show[ing] the Class Vehicles driving in America" are "actionable misrepresentations" because plaintiffs allege those vehicles are incompatible with American diesel fuel (Opp. at 12); there is no authority for that argument.[3]

**B.  Plaintiffs Do Not Allege GM's Knowledge Of A Defect At The Time Of Sale.**

Plaintiffs concede that allegations about consumer complaints are "not as proof that GM

---

[2] *See also Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection. Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) ("[A]dvertising which merely states in general terms that one product is superior is not actionable") (citation omitted).

[3] Also, no plaintiff alleges individual reliance on a specific advertisement showing the vehicles driving in America. *See* Class Action Compl. ("CAC"), ECF No. 1 at ¶¶ 11-34.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

knew that the CP4 was failing" at the time of sale. *See* Opp. at 6. By making no response, plaintiffs also concede that GM service bulletins do not establish GM's knowledge of the defect. *See* GM Br. at 12-13. No plaintiff alleges that GM refused to repair a vehicle with a fuel pump failure within the warranty period. *See* CAC ¶¶ 11-12, 14, 23, 32-33, 34.

Instead, plaintiffs incorrectly argue that GM's knowledge can be alleged "generally," with no requirement to plead specific facts. Opp. at 5. The law requires them to "set forth the factual basis for [their] belief." *Luciw v. Bank of Am., N.A.*, 2011 WL 1740114, at *4 (N.D. Cal. May 5, 2011) (dismissing UCL claim) (quoting *Russell v. Epic Healthcare Mngmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999)). "[S]peculation and conclusory allegations are insufficient." *Id.*[4] Plaintiffs' arguments concerning GM's knowledge fail because they are not supported by the law or allegations in the complaint.

First, plaintiffs' arguments about industry knowledge and failures in other non-GM vehicles (Opp. at 6-7) do not support a plausible inference of GM knowledge. *See* GM Br. at 10-11. Plaintiffs cannot rely on allegations about *different* companies' knowledge of *different* defects in *different* vehicles. *See Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 876 (N.D. Cal. 2010) ("Rule 9(b) requires particularized allegations of the circumstances constituting fraud. A plaintiff may not merely lump together multiple defendants.") (citing *Swartz v. KPMG, LLP*, 476 F.3d 756, 765 (9th Cir. 2007)). Plaintiffs do not even allege that the CP4 pumps that Audi and Volkswagen used are the same as the CP4 pumps that GM used. GM's Br. at 9.

Second, plaintiffs do not allege any facts supporting their argument that GM "discovered the defect" through design-phase testing. *See* Opp. at 6. They merely speculate that "GM [ ] *would have* discovered the defect" because a few drivers later complained of failures. CAC ¶¶ 57-59 (emphasis added). Plaintiffs' speculation skips over the fact that the majority of plaintiffs here

---

[4] *See also Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) ("we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims of fraud on speculation and conclusory allegations'") (citing *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d. Cir. 1990)).

have not experienced any problems with their fuel pumps after thousands of miles of driving. Their speculation is not plausible without other factual support. *See Stewart v. Electrolux Home Prod., Inc.*, 2018 WL 1784273, at *9 (E.D. Cal. Apr. 13, 2018) (rejecting "general allegations about [] internal testing or quality controls"); *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 743 (E.D. Mich. 2017) (rejecting allegations of knowledge based on "pre-production design failure mode effects analysis" and "production design failure mode effects analysis," among other testing data).

Third, their argument that there is a so-called "alarming uptick in GM fuel-pump failures" for 2011 vehicles (Opp. at 7) is refuted within the same paragraph. On the one had plaintiffs say that "[d]efect trends are now frequently identified after just one or several reported failures" (*id.*), and on the other hand they concede that models with different *not defective* fuel pumps also experienced a number of failures. *Id.* (describing 16 fuel pump failures in 2009 and 2010 Silverado and Sierra trucks that are not equipped with CP4 pumps). Further, production statistics show no "alarming" increase in failure rates following introduction of the CP4 pump in GM vehicles in 2011. *See* Ex. 1, ECF No. 39-1, at 2-3 (showing failure rate less than 0.1% for Sierras and Silverados every year from 2009-2011).[5] Plaintiffs' argument is also undercut by GM's written statement to NHTSA that it was not aware of a fuel pump defect in GM vehicles. *See id.*

### C. California Law Does Not Support A Duty To Disclose Here.

Plaintiffs' inability to adequately allege GM's knowledge defeats their argument that GM had a duty to disclose. *See San Diego Hospice v. Cnty. of San Diego*, 31 Cal. App. 4th 1048, 1055 (1995); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1095 (S.D. Cal. 2010) ("Sony had no duty to disclose facts of which it was unaware."); *see also* Opp. at 8 (asserting "GM was obligated to disclose *what it knew*") (emphasis added).

Plaintiffs' conclusory allegations of "superior knowledge" and active concealment (Opp.

---

[5] Plaintiffs cherry-pick warranty data. *See* Ex. 1 at 8 (showing more warranty claims for 2009 Silverados than 2011 Silverados).

8-9) do not establish a duty to disclose. *See Taragan v. Nissan N. Am., Inc.*, 2013 WL 3157918, at *6–7 (N.D. Cal. June 20, 2013) ("[A] plaintiff cannot establish a duty by pleading, in a purely conclusory fashion, that a defendant was in a superior position to know the truth about a product and actively concealed the defect") (quoting *Tietsworth v. Sears,* 720 F.Supp.2d 1123, 1134 (N.D. Cal. 2010)). Also, plaintiffs' argument that there was no or only a limited amount of publicly available information about the alleged defect is undercut by the dozens of public sources plaintiffs cite in the complaint. *E.g.*, GM Br. at 14; *see also, e.g.*, CAC ¶¶ 6, 32, 49, 53-56, 61, 62, 67-70, 74-102, 106-08. Plaintiffs' active concealment argument is likewise directly contradicted by the same public information and their allegations that GM provided information about its fuel pumps to NHTSA.[6] CAC ¶ 54.

Plaintiffs also do not plead sufficient facts to show that the alleged defect is either a safety hazard or a material product defect. Plaintiffs' conclusory allegation of a safety hazard (Opp. at 3-5) without any facts showing injury is not sufficient to establish a duty to disclose under California law. *See* GM Br. at 13. Plaintiffs' argument that the alleged "defect is material" (Opp. at 3-5) is contradicted by admissions that most plaintiffs have experienced no problems and continue to drive their vehicles daily. GM Br. at 13.

## II. THE UNJUST ENRICHMENT CLAIMS ARE NOT VIABLE.

Plaintiffs do not dispute that where an express warranty "overlap[s] in scope" with the unjust enrichment claim, the express warranty controls and bars the unjust enrichment claim. Opp. at 13. That accords with the rulings of this Court repeatedly refusing unjust enrichment claims where "express binding agreements exist and define the parties' rights." *Gerstle v. Am. Honda Motor Co., Inc.*, 2017 WL 2797810, at *14 (N.D. Cal. June 28, 2017); *Mandani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 652867, at *9 (N.D. Cal. Feb. 15, 2019); *Deras v.*

---

[6] *Borkman v. BMW of N. Am., LLC* is inapposite because plaintiffs have not alleged comparable facts. 2017 WL 4082420, at *7 (C.D. Cal. Aug. 28, 2017). In that case, plaintiffs alleged that "rather than repair the problems under warranty, BMW dealers performed repairs that simply masked the defects." *Id.* Here, no plaintiff alleges that GM performed any "futile repairs" on their vehicles. *Cf.* Opp. at 14.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*Volkswagen Grp. of Am., Inc.*, 2018 WL 2267448, at *3 (N.D. Cal. May 17, 2018). Plaintiffs here expressly plead that the alleged defect is "covered under warranty" (meaning GM's *express* written warranty). *See* CAC ¶¶ 4, 28, 115, 125. That express warranty defines the parties' rights with respect to vehicle defects, and precludes plaintiffs' unjust enrichment claim.

Plaintiffs' arguments to the contrary all miss the mark. First, plaintiffs attempt to re-characterize their unjust enrichment claims as based on pre-sale conduct. *See* Opp. at 13 n. 3. This is to no avail because any pre-sale claims are based on the exact same "subject matter" (the vehicles' alleged incompatibility with American diesel fuel causing fuel pump failure) that plaintiffs say falls under the express warranty. *See* CAC ¶¶ 4, 28, 115, 125; *see also* GM Br. at 14 (citing *Deras*, 2018 WL 2267448, at *3 (Tigar, J.)). In any event, plaintiffs do not plausibly plead any pre-sale fraudulent concealment. *See* Section I above.

Second, plaintiffs do not contest that they have adequate remedies at law, but argue that they may plead in the alternative. Opp. at 14. This also is to no avail because plaintiffs' unjust enrichment claims are based on the same conduct as the statutory and tort claims through which they seek relief, and therefore their "unjust-enrichment claim[s] [are] superfluous and must be dismissed." *Smith v. Ygrene Energy Fund, Inc.*, 2017 WL 3168519, at *12 (N.D. Cal. July 26, 2017); *accord Top Agent Network, Inc. v. Zillow, Inc.*, 2015 WL 7709655, at *8 (N.D. Cal. Apr. 13, 2015).

Finally, plaintiffs' argument that contractual privity is not required for unjust enrichment (Opp. at 15) is irrelevant because they do not plead the required facts showing a benefit conferred on GM, rather than a third party. *See* GM Br. at 14 (plaintiffs who purchased used vehicles from third-parties conferred no benefit on GM).

### III. THE IMPLIED WARRANTY CLAIMS FAIL ON MULTIPLE GROUNDS.

#### A. California Privity Law Precludes Plaintiffs' Implied Warranty Claim.

Plaintiffs do not dispute that California implied warranty claims require privity of contract, and their arguments for an exception to the privity requirement fail.

First, plaintiffs do not cite any California authority for a third-party beneficiary exception

under the circumstances here.[7] Opp. at 15; *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) ("[A] federal court sitting in diversity is not free to create new exceptions" to established state law.); *Gerstle v. Am. Honda Motor Co., Inc.*, 2017 WL 2797810, at *14 (N.D. Cal. June 28, 2017) (exceptions to California state law "must be developed in California's state courts or legislature, not in a federal district court").

Second, plaintiffs do not identify any specific advertisements upon which they relied. Opp. at 16; *see Long v. Graco Children's Prod. Inc.*, 2013 WL 4655763, at *12 (N.D. Cal. Aug. 26, 2013) (dismissing implied warranty claim where plaintiff failed "to allege any written labels or advertisements on which he can reasonably rely").

Finally, plaintiffs do not plead any facts showing that GM had any right to control the independent dealerships where plaintiffs purchased their vehicles, as required to plausibly establish an agency relationship between GM and those dealerships.[8] *See Secci v. United Independant Taxi Drivers, Inc.*, 8 Cal. App. 5th 846, 855 (2017), *review denied* (May 17, 2017) ("In the absence of the essential characteristic of the right of control, there is no true agency") (quoting *Van't Rood v. Cty. of Santa Clara*, 113 Cal. App. 4th 549 (2003)).

### B. The Class Vehicles Were Fit For Their Ordinary Purpose At The Time Of Sale.

Plaintiffs cannot plausibly establish that all of the putative class vehicles are unmerchantable by alleging that a small minority of plaintiffs required fuel pump maintenance or replacement after thousands of miles of driving. Opp. at 17-18; *see Beshwate v. BMW of N. Am., LLC*, 2017 WL 4410169, at *10 (E.D. Cal. Oct. 4, 2017) ("[A]n increase in the frequency of maintenance and/or of replacement of parts is insufficient to find a plausible contention that the

---

[7] *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65 (1978) is not a products liability case, and is inapposite.

[8] Plaintiffs rely on *Bryde v. Gen. Motors, LLC*, 2016 WL 6804584 (N.D. Cal. Nov. 17, 2016), but the *Bryde* court erroneously inferred an agency relationship based on plaintiffs' contacts with GM and/or its dealerships as well as GM's distribution of technical service bulletins on the alleged defect. *See id.* at 16. These facts do not establish a manufacturer's right to control the dealerships' activities.

7   Case No. 3:18-cv-07054-JST
GM's Reply in Support of Motion to Dismiss

CROWELL
& MORING LLP
ATTORNEYS AT LAW

vehicle is not in a safe condition nor that it is not substantially free from defects for an implied warranty claim."). To the contrary, plaintiffs' vehicles provided, and in most cases continue to provide, transportation over hundreds of thousands of miles without issue; this is evidence of the merchantability of the vehicles.[9] *See Acedo v. DMAX, Ltd.*, 2015 WL 12912365, at *22 (C.D. Cal. July 31, 2015) (dismissing implied warranty claim where plaintiff did not plead facts showing ability to drive was "materially hindered").

### C. Plaintiffs Do Not Allege A Defect During Their Warranty Periods.

Plaintiffs' argument that a latent defect rendered their vehicles "unmerchantable" is contradicted by the facts alleged in their complaint, and does not revive their insufficient implied warranty claim. *See* Opp. at 18-19. Plaintiffs who purchased used vehicles outside of the warranty period or who did not experience a defect within the warranty period cannot state an implied warranty claim because they do not plausibly allege a latent defect rendering their vehicles unfit for transportation. *See Mexia v. Rinker Boat Co.,* 174 Cal. App. 4th 1297, 1305 (2009) (to be considered latent, a defect must render a good "unusable and unsalable" upon discovery); *see also Victorino v. FCA US LLC*, 326 F.R.D. 282, 291 (S.D. Cal. 2018) (in the absence of manifestation, plaintiff must prove that the alleged defect is "substantially certain to result in malfunction during the useful life of the product"). Most plaintiffs, including five who allegedly experienced the defect, admit that they continue to use their vehicles today. *See* CAC ¶¶ 11, 12, 14, 23, 25[#2]. And two plaintiffs admit to having sold or traded-in their vehicles for value, even after alleged

---

[9] Plaintiffs cite *Sloan v. General Motors*, 287 F. Supp. 3d 840, 879-80 (N.D. Cal. 2018), to argue that merchantability is not established "merely because a vehicle provides transportation from point A to point B." The *Sloan* court relied on *Isip v. Mercedes-Benz*, 155 Cal. App. 4th 19 (2007), for the proposition that drivability of a vehicle does not establish merchantability. *See* Opp. at 17-18; 287 F. Supp. 3d 840, 879 (N.D. Cal. 2018), but the vehicle at issue in *Isip*, which had just 3,900 miles on it, was incapable of providing reliable transportation. *See id.* at 22 ("When the car automatically shifted gears to pick up speed, the car pulled back, hesitated, and then took off like a slingshot." It also "smell[ed], lurche[d], clank[ed], and emit[ed] smoke over an extended period of time."). Here, by contrast, the vast majority of plaintiffs allege *no disruption whatsoever* in the operation of their vehicles.

fuel pump issues. *See* CAC ¶¶ 20, 28.[10] These admissions contradict any claim that the vehicles are unusable, unsalable, or that manifestation of the alleged defect is substantially certain to occur.

Plaintiffs' argument that they can state timely implied warranty claims through conclusory allegations of a "latent" or "inherent" defect in the absence of supporting facts (Opp. 18-19) would render all limitations on implied warranties meaningless, in conflict with California law. *See In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1100 (S.D. Cal. 2010) ("[M]anufacturers may impose limits on implied warranties.") (citing *Hovsepian v. Apple*, 2009 WL 2591445, at *8 (N.D. Cal. Aug. 21, 2009)); *see also Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2006), as modified (Nov. 8, 2006) ("[V]irtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a latent defect that existed at the time of sale or during the term of the warranty.").

## IV. PLAINTIFFS DO NOT STATE A CLAIM UNDER THE SONG-BEVERLY ACT.[11]

Plaintiffs' latent defect theory likewise does not change the insufficiency of their Song-Beverly claim. *See* Opp. at 20. Plaintiffs' opposition does not explain why claims by plaintiffs who purchased used vehicles should survive under Song-Beverly. *See id.*; GM Br. at 19. Plaintiffs' Song-Beverly claims should be dismissed for failure to plausibly allege that their vehicles were unmerchantable at the time of sale. *See* Section III.B & C above; GM Br. at 19.

## V. WITHOUT VIABLE STATE LAW WARRANTY CLAIMS, THERE ARE NO MMWA CLAIMS.

Plaintiffs do not dispute that their MMWA claims rise and fall with the underlying state law warranty claims. *See* Opp.at 20.

---

[10] Plaintiffs allege that the vehicles have long had a "reputation for maintaining a high resale value." CAC ¶¶ 11-34; *see also id.* ¶ 31 (alleging this reputation existed as recently as October 2018).

[11] By not responding, plaintiff Tirozzi concedes that, as a professional driver, he cannot state a Song-Beverly or CLRA claim. *See* GM Br. at 23.

## VI. PLAINTIFFS WITHOUT A MANIFESTED DEFECT LACK INJURY.

Plaintiffs argue for their conclusory injury theory but it is "not credible." *See Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 723 (9th Cir. 2017). First, their argument that the defect has manifested in all vehicles is not supported by any facts. Opp. at 21. The supposed "inherent[ ] incompatibility" (*id.*) is defeated by their own allegations that plaintiffs have driven their vehicles daily, using American diesel fuel, for thousands of miles without issue. The facts pled do not show that the alleged defect is substantially certain to occur, and therefore plaintiffs have not "plausibly alleged a defect." Opp. at 22; *see also In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1163 (C.D. Cal. 2011) (cited by plaintiffs and finding failure to allege a plausible injury can "fatally undermine[ ]" injury for standing purposes). The sixteen plaintiffs here do not allege that they experienced the defect, unlike plaintiffs in *Luong* and *Rollolazo*. *See Luong v. Subaru of Am., Inc.*, 2018 WL 2047646, at *4 (N.D. Cal. May 2, 2018); *Rollolazo v. BMW of N. Am., LLC*, 2017 WL 1536456, at *10 (C.D. Cal. Feb. 3, 2017).

Second, because plaintiffs do not identify any specific GM advertisements or statements that they relied upon, plaintiffs have not plausibly alleged that a GM misrepresentation caused them to pay more than they otherwise would have for their vehicles. *See* Opp. at 20-21; Section I.A above; *cf. Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (plaintiffs alleged they would not have purchased defendant's product but for the "false price information"); *Maya v. Centex Corp.*, 658 F.3d 1060, 1065 (9th Cir. 2011) (plaintiffs would not have purchased their homes if they had known defendants were marketing neighboring properties to high-risk buyers, increasing the risk of foreclosures and short sales in the neighborhood).[12]

Finally, plaintiffs have not plausibly alleged a safety hazard. *See* Opp. at 21; Section I.C

---

[12] Plaintiffs' reliance on emissions cases is misplaced because in those cases plaintiffs plausibly alleged that they did not get what they paid for (*i.e.*, low emission vehicles). *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 349 F. Supp. 3d 881, 897 (N.D. Cal. 2018); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 943 (N.D. Cal. 2018).

above.

## VII. THE CLAIMS OF CERTAIN PLAINTIFFS ARE UNTIMELY.

Plaintiffs do not plausibly allege tolling based on fraudulent concealment for the same reasons that they do not plausibly allege a fraud claim. *See* Section I above. They cannot point to any facts in the complaint showing active concealment. *See* Opp. at 24.[13]

Plaintiffs do not dispute that the discovery rule cannot save untimely implied warranty, Song-Beverly and MMWA claims. *See* Opp. Br. at 22-23. While plaintiffs suggest that by alleging fuel pump failures in 2017 and 2018 plaintiffs Sutherland, Rudy, and Jensen have sufficiently pled facts to invoke the discovery rule (Opp. at 25), other plaintiffs have not alleged any facts showing the "time and manner of discovery," and thus cannot take advantage of the discovery rule.[14] *See Aberin v. Am. Honda Motor Co.*, 2018 WL 1473085, at *9 (N.D. Cal. Mar. 28, 2018) (cited by plaintiffs, dismissing untimely consumer protection claims for failure to allege when they discovered the alleged defect); *Garcia v. Gen. Motors LLC*, 2018 WL 6460196, at *4 (E.D. Cal. Dec. 10, 2018) ("discovery related facts should be pleaded in detail to allow the court to determine whether the fraud should have been discovered sooner.") (quoting *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1472 (2014)).

## CONCLUSION

For these reasons, GM respectfully requests dismissal of all of plaintiffs' claims.

---

[13] *In re MyFord Touch Consumer Litig.* does not apply here because plaintiffs have not alleged that GM "pretended to fix the problems . . . instead of actually admitting that the problems could not be fixed." 46 F. Supp. 3d 936, 984 (N.D. Cal. 2014). Plaintiffs allege no specific instances of GM "placing blame on consumers and voiding their warranties." *See* Opp. at 24.

[14] Plaintiff Sizelove does not allege when the defect manifested in his vehicle. CAC ¶ 12. Plaintiffs Huss, McCoy, McAlister, Lawson, Huges, Rice, and Smith, who experienced no problem with their vehicles, allege no facts as to when they learned of the purported defect. *Id.* ¶¶ 13, 18, 19, 22, 24, 26, 27. Because plaintiff Tirozzi was "charged with duty to investigate" when the "alleged [fuel pump] defect manifested" in August 2015, his CLRA and fraud claims are untimely even if the discovery rule applies. *See* Opp. Br. at 24; CAC ¶ 32.

DATED: June 5, 2019						Respectfully submitted,

							CROWELL & MORING LLP

							*/s/ Kathleen Taylor Sooy*

							Kathleen Taylor Sooy
							April N. Ross
							Joshua Thomas Foust

							Attorneys for
							GENERAL MOTORS LLC

# CERTIFICATE OF SERVICE

In accordance with Rule 5-5 of the Local Rules of Practice in Civil Proceedings Before the United States District Court for the Northern District of California, I, Kathleen Taylor Sooy, hereby certify under penalty of perjury under the laws of the United States of America that on June 5, 2019, a true copy of the above document was filed through the Court's Case Management/Electronic Case Filing ("CM/ECF") System and served by that System upon all counsel of record registered for the System and deemed to have consented to electronic service in the above-captioned case. Any other counsel of record will be served by electronic mail and/or first-class mail on the same date.

Dated: June 5, 2019                                   CROWELL & MORING LLP


                                                      By: */s/ Kathleen Taylor Sooy*
                                                          Kathleen Taylor Sooy

                                                      Attorneys for General Motors LLC